UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| W.F.,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　Defendant. | Case No. 25-cv-03681-NC<br><br>**ORDER REVERSING ADMINISTRATIVE LAW JUDGE DECISION AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>Re: ECF 9, 13, 14 |

Claimant W.F. appeals from an Administrative Law Judge's denial of disability benefits for the period beginning May 1, 2019. W.F. argues the ALJ erred in concluding his mental impairments did not meet a listing at step three of the sequential process and that the ALJ improperly weighed the medical opinions and medical evidence associated with W.F.'s mental impairments. W.F. also argues the ALJ erred in evaluating both his mental and physical impairments by discounting his testimony, determining his residual functional capacity (RFC), and disregarding vocational expert testimony. The Court agrees that the ALJ erred in weighing the medical opinions and evaluating the medical evidence for his mental impairments, particularly at step three. Because neither party argues these errors were harmless, the Court REVERSES the ALJ's decision and REMANDS for further consideration and proceedings. The Court does not reach the parties' remaining arguments.

## I. BACKGROUND

### A. Procedural History

W.F. filed an application for disability insurance benefits under Title II and Title XVI alleging a disability onset date of May 1, 2019. AR 1043. The claim was denied initially and upon reconsideration. AR 1043. The ALJ held a hearing on February 29, 2024, and issued an unfavorable decision on May 21, 2024. AR 1043, 1058. The Appeals Council denied W.F.'s request for review. AR 1–4.

W.F. appealed to this Court on April 28, 2025. ECF 1. W.F. filed a brief in support of reversal and remand. ECF 9. The Commissioner opposed, seeking to affirm the ALJ's decision. ECF 13. W.F. replied. ECF 14. All parties have consented to magistrate judge jurisdiction. ECF 5, 7.

### B. ALJ Decision

The ALJ followed the five-step sequential process under 20 CFR § 404.1520(a) and § 416.920(a) to determine whether W.F. has been disabled for a 12-month period since May 1, 2019. At step one, the ALJ concluded W.F. has not engaged in substantial gainful activity since the alleged onset date. AR 1046. At step two, the ALJ concluded W.F. has the severe impairments of morbid obesity, bilateral inguinal hernia, generalized anxiety disorder, alcohol dependence in remission, and persistent depressive disorder. AR 1046. At step three, the ALJ concluded that W.F.'s impairments, singly or in combination, did not meet or medically equal a listed impairment, including for listings 5.02, 5.05, 5.06, 5.07, 5.08, 5.09, 12.04, and 12.06. AR 1047–50. Prior to step four, the ALJ concluded that W.F. has an RFC[1] to perform medium work "except that he would need to work independently, meaning other individuals could be in the immediate vicinity but only incidental interactions are required in order to accomplish the essential functions of the

---

[1] A claimant's RFC is a determination of how much the claimant can still do in a work setting despite physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must consider the limiting effects of all impairments, including those that are not severe, as well as "the claimant's subjective experiences of pain" and other symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

1  job." AR 1050–56. At steps four and five, the ALJ concluded W.F. could perform past
2  relevant work as a janitor as well as other jobs that exist in significant numbers in the
3  national economy. AR 1056–57. As such, the ALJ concluded W.F. was not disabled
4  between May 1, 2019, and the date of his decision, May 21, 2024. AR 1057–58.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance"). Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## III. DISCUSSION

W.F. argues the ALJ erred: (1) at step three in determining his mental impairments did not meet a listing; (2) by improperly weighing medical opinions; (3) in evaluating the medical evidence; (4) by discounting W.F.'s testimony; and (5) in formulating the RFC, including by ignoring vocational expert testimony. Because W.F.'s arguments on the ALJ's treatment of the medical opinions and medical evidence are applicable to the ALJ's analysis at step three, the Court analyzes them within that context. The ALJ erred in

3

weighing the medical opinions and medical evidence and, as a result, erred at step three.

### A. The ALJ Erred at Step Three

A claimant is found disabled at step three if they have "an impairment(s) that meets or equals" a listing. 20 C.F.R.§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). A listing is a "systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).

At step three, the ALJ concluded "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." AR 1047. Listing 12.04 is for depressive, bipolar and related disorders, and listing 12.06 is for anxiety and obsessive-compulsive disorders. Both listings require a claimant to meet the criteria of either paragraphs A and B or paragraphs A and C. W.F. challenges the ALJ's paragraph B findings.

Paragraph B requires an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4)."

The ALJ concluded W.F. did not meet the paragraph B criteria because he has (1) no limitation in understanding, remembering, or applying information, (2) a moderate limitation in interacting with others, (3) a moderate limitation in concentrating, persisting, and maintaining pace, and (4) a mild limitation in adapting and managing oneself. AR 1048–49. Because the Court agrees that the ALJ erred in weighing the medical opinions and evaluating the medical evidence to reach these conclusions, the Court finds the ALJ erred at step three.

4

### 1. The ALJ Erred in Weighing the Medical Opinions

An ALJ must evaluate every medical opinion in evidence and consider various factors in determining the weight to give each opinion. 20 C.F.R. § 404.1527(c). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citation omitted).

For claims filed after March 27, 2017, the ALJ must articulate how persuasive he finds all the medical opinions in the record. 20 C.F.R § 404.1520c(b). The ALJ must explain how he considered the supportability and consistency of a medical opinion to determine the persuasiveness of the opinion. 20 C.F.R § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R § 404.1520c(c)(2)). The ALJ may consider other factors such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id.* (citing 20 C.F.R. § 404.1520c(c)(3)(i)–(v)).

Here, the ALJ errs in his treatment of Dr. Wiebe's and Dr. Dixit's opinions and fails to fully address the supportability and consistency factors of Dr. Dixit's, Dr. Kresser's, and Dr. Weiss's opinions. As discussed below, the ALJ's analysis of the consistency factor for Wiebe's opinion is also unsupported by substantial evidence.

**Dr. Wiebe.** Wiebe conducted a three-hour psychological evaluation with W.F. in March 2022 that included the administration of a clinical interview and at least ten tests. AR 2306, 2310. She diagnosed W.F. with chronic posttraumatic stress disorder, major depressive disorder with anxious distress, unspecified personality disorder, and unspecified

5

neurocognitive disorder, among other diagnoses. AR 2318. Wiebe assessed W.F.'s cognitive functioning to include (1) moderate to severe memory impairments, (2) moderate to marked impairments in abilities to interact with others, (3) moderate impairments in attention, concentration, and pacing, and (4) moderate to severe impairments in abilities to adapt and manage oneself in light of changes and stressors. AR 2317, 2320–21. The ALJ found Wiebe's opinion supported by her examination, but "not consistent with the medical evidence of record of mental impairments, as the claimant's treating sources indicated that the claimant should continue searching for employment." AR 1054. The ALJ concluded Wiebe's opinion was not persuasive. AR 1054.

**Dr. Dixit.** Dixit conducted a psychological evaluation with W.F. in November 2022 that included a clinical interview and various tests. AR 3702. She diagnosed W.F. with a chronic "Adjustment Disorder with mixed anxiety and depressed mood," but noted "[n]o signs and symptoms of a thought disorder." AR 3704. Dixit assessed W.F.'s cognitive functioning to include (1) no to mild limitations in understanding, remembering or carrying out instructions, (2) mild to moderate limitations in interacting with others, (3) mild limitations in maintaining pace and persistence and no limitations in maintaining attention and concentration. AR 3705. Dixit did not opine on any limitations in (4) adapting and managing oneself. The ALJ found Dixit's opinion on W.F.'s lack of or mild limitations in attention, concentration, and maintaining pace supported by her examination but inconsistent with the medical evidence and W.F.'s self-reports. AR 1055. The ALJ did not assess the supportability and consistency factors for the rest of her opinion.

**Drs. Kresser and Weiss.**[2] Kresser and Weiss reviewed the psychological medical evidence of record for W.F.'s initial disability determination in May 2022 and upon reconsideration in January 2023, respectively. AR 1048. Kresser found the medical

---

[2] The Commissioner argues that W.F. forfeited any argument as to the ALJ's weighing of the prior administrative medical findings by Kresser and Weiss because he failed to adequately discuss the point. ECF 13 at 13 n.5. The Court finds the argument ingenuine given that the Commissioner cites to where W.F. raised the argument in his brief. *See* ECF 9 at 7–8.

6

evidence did not establish any medically determinable mental impairment. AR 1048, 1110. Weiss found W.F. had nonsevere impairments of depressive, bipolar and related disorders. AR 1048, 1123. She also found W.F. had no limitations in understanding, remembering, or applying information, and mild limitations in the remaining areas. AR 1124. It is not clear how the ALJ weighted Kresser's and Weiss's opinions. He departed from their opinions by finding W.F.'s anxiety and depressive disorders severe at step two of the sequential process and rejected Weiss's view that "there were no documented social anxiety concerns or consistent objective findings" before finding moderate limitations in social interaction. AR 1055. But the ALJ does not analyze the supportability and consistency factors for either opinion.

Taken altogether, the ALJ's treatment of the medical opinions is incomplete and inconsistent, particularly as applied at step three. The ALJ erred by failing to analyze the supportability and consistency factors for three of the four opinions. The ALJ is responsible for resolving conflicts in medical testimony and, by ignoring Kresser and Weiss's opinions without weighing them, he did not do so here. *See Garrison*, 759 F.3d at 1010.

In addition, even though the ALJ found Dixit's opinion more persuasive than Wiebe's, he rejected Dixit's mild limitations on attention and concentration and found moderate limitations. Wiebe's opinion found moderate limitations in this same area, but the ALJ discounted her opinion as inconsistent with the record. Not only is this treatment contradictory, but it raises the question of how the ALJ arrived at the conclusion of moderate limitations in attention and concentration. *See Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (noting an ALJ "cannot arbitrarily substitute his or her own judgment for competent medical opinion," and must not "succumb to the temptation to play doctor and make [his or her] own independent medical findings"); *Corvelo v. Kijakazi*, No. 20-cv-01059-WHA, 2022 WL 1189885, at *5 (N.D. Cal. Apr. 21, 2022) ("[B]ecause the ALJ rejected every medical opinion regarding mental impairments he erroneously based his conclusion on claimant's mental limitations solely on his own lay

7

interpretation of the raw medical evidence contained in claimant's treatment records."). The same is true for the mild limitations the ALJ found for adapting and managing oneself. Dixit did not opine as to a functional limitation in this area, and the ALJ rejected Wiebe's opinion, which found moderate to severe limitations. The ALJ also found moderate limitations on W.F.'s ability to interact with others where Dixit found a mild to moderate limitation and Wiebe found a moderate to severe limitation. Confusingly, the ALJ landed in the middle of their opinions, but had discounted Wiebe's opinion and not Dixit's.

### 2. The ALJ Erred in Evaluating the Medical Evidence

The ALJ also erred at step three and in evaluating the consistency factor of Wiebe's opinion because, based on his selective reading of the medical evidence, his conclusions are unsupported by substantial evidence.

First, the ALJ summarily finds Wiebe's opinion inconsistent with the medical evidence of record based on one instance of W.F.'s therapist encouraging W.F. to continue searching for employment. AR 1054. An ALJ may not "cherry-pick[] the record, ignoring medical evidence that does not support his conclusion." *P.E. v. Saul*, 445 F. Supp.3d 306, 335 (N.D. Cal. 2020); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ's single cherry-picked example here does not amount to substantial evidence because it does not outweigh the hundreds of pages of medical records, particularly from near-weekly substance abuse and therapy counseling sessions, that support many of Wiebe's observations and opinions. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). Behavioral health screening assessments between October 2019 and July 2023 consistently classified W.F. as experiencing moderately severe depression and anxiety (AR 2489, 2496, 3459, 3756, 4011, 4373), with one mild classification (AR 1483) and occasional severe classifications (AR 1604, 3756). These symptoms made it "very difficult" for W.F. to handle work, home upkeep, and interactions with others. AR 3756, 4011, 4373. Records from regular counseling sessions contain a litany of notes documenting W.F.'s

8

"significant" depression, anxiety, stress, sad mood, isolation, melancholy, restlessness, worry, anger, and irritation. *E.g.* AR 1424, 1519, 2381, 2615, 2619, 2761, 2766, 2824, 2896, 2912, 2948, 3260, 3282, 3299, 3343, 3372, 3423, 3456, 3480, 3486, 3514, 3700. The records reflect an ongoing interest by W.F. in finding employment and becoming a truck driver, but also an inability to ultimately do either. *E.g.* AR 1366, 1372, 1375, 1381, 1400, 1409, 1432, 1438, 1445, 1477, 1480, 1483, 1490, 1507, 1513, 1614, 2489. It's unclear why a therapist's encouragement for W.F. to pursue those goals undermines the vast remainder of the medical evidence, especially given W.F. was homeless for much of the claim period and unemployment added to his daily stressors and led him to seek out aid programs. *See* AR 1480, 1596.

Second, as to the ALJ's analysis of the paragraph B criteria at step three, the ALJ found no limitation in understanding, remembering, or applying information based on W.F.'s "actual level of activity and benign mental exams," and Dixit's opinion. This conclusion is not supported by substantial evidence in the record. Only sentences before, the ALJ noted that while W.F. scored average or well on some memory tests in Wiebe's evaluation, he scored lower on others, including in the first percentile on one. AR 1048, 2311. And though Dixit found no to mild impairment in this area, W.F.'s scores on memory tests in his evaluation with Dixit consistently fell in the "low average impaired range." AR 3704. As W.F. argues here, the record is also replete with examples of what could be W.F.'s poor memory. By the Court's rough count, the record includes 44 instances where W.F. missed or was late to therapy appointments. AR 1379, 1424, 2453, 2464, 2561, 2850, 2854, 2993, 3276, 3339, 3379-80, 3405, 3427, 3542, 3577, 3600, 3607, 3660, 3727, 3734, 3739, 3744, 3763, 3768, 3753, 3785, 4098, 4118, 4135, 4140, 4155, 4174, 4217, 4257, 4174, 4272, 4281, 4291, 4348, 4376, 4384, 4389, 4393, 4446. At one point he was discharged from therapy as a result.

Third, the ALJ likewise relies on W.F.'s "benign mental examinations and actual level of mental functioning" to determine his limitations in concentrating, persisting, and maintaining pace. The Court does not find this characterization of the record supported by

9

substantial evidence. The record for nearly every regular counseling session observes W.F.'s thought content and thought process as some combination of tangential, circumstantial, disorganized, and distractable—his "baseline." *E.g.* AR 2374, 2397, 2399, 2415, 2505, 2535, 2780, 2787, 2798, 2802, 2814, 2819, 2824, 2843, 2854, 2875, 3258, 3280, 3286, 3299, 3343, 3370, 3384, 3401, 3423, 3438, 3454, 3467, 3480, 3486, 3514, 3520, 3546, 3585, 3610, 3644, 3666, 3698, 3731, 3742, 3751, 3761, 3789, 3795, 3841, 3883, 3931, 3971, 3989, 4092, 4098, 4121, 4252, 4265, 4338, 4346, 4379, 4405, 4433. In addition, during the hearing before the ALJ, W.F. veered off topic and had to ask what the question was twice. AR 1077, 1079.

Finally, as to W.F.'s ability to interact with others and to adapt and manage himself, the ALJ appears to weight heavily W.F.'s single response during the Dixit evaluation as to "the right thing to do were he to see a young child alone in the street." AR 1049. The ALJ does not appear to account for the notes from W.F.'s regular counseling sessions, a major theme of which was W.F.'s strained relationships with others and inappropriate responses in social situations. The record teems with examples of difficulties and fallings out with friends and peers, including other members of his AA group, constant stress, anger, and frustration arising from others' behaviors, and apprehension and resentment in interactions with others. *E.g.* AR 1378, 1397, 1418, 1424, 1438, 1444, 1489, 1501, 1505, 1519, 1522, 2507, 2537, 3168, 3273. W.F. notably experienced ongoing difficulties with his landlord and with two roommates that included a physical altercation, being kicked out of the house, and an ensuing legal dispute. Records from a hospitalization noted "known inappropriate behavior," decreased insight, and impulsivity, and, at one point in the therapy records, W.F. did not express understanding for the risks of a carjacking he interfered in. AR 9–10, 4288.

On remand the ALJ must consider the entire medical record to conduct the analysis at step three and consider the consistency of the medical opinions in a manner supported by substantial evidence.

10

### B. The Court Does Not Address Arguments on the Weighing of Claimant Testimony or the RFC

In addition to challenging the ALJ's analysis at step three and the weighing of the medical opinions and evidence, W.F. also challenges the ALJ's evaluation of his testimony and the RFC determination, including the treatment of vocational expert testimony. The Court declines to reach the parties' arguments on these issues for two reasons. First, as to the ALJ's treatment of claimant testimony, it is not clear what claimant testimony W.F. argues the ALJ impermissibly discounted. *See* ECF 9 at 5–6. The Court cannot discern if W.F. is challenging the treatment of his testimony on his mental impairments or physical impairments or both, and what parts of this testimony. Second, based on the Court's conclusions above, the ALJ's treatment of claimant testimony and RFC determination are subject to change on remand when the ALJ properly weighs the medical opinions and record. *See Garrison*, 759 F.3d at 1014 (explaining claimant testimony may only be discounted by pointing to specific, clear and convincing reasons from the record); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (explaining an RFC determination must consider and discuss all relevant medical and nonmedical evidence in the record).

### C. The Court Remands for Further Consideration and Proceedings

W.F. asks the Court to reverse and remand with instructions to award benefits or, in the alternative, to remand for further proceedings. "Usually, '[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (citation omitted). Courts have discretion to remand for the immediate award of benefits if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020.

The Court does not find that this is the exceptional case where remand for the immediate award of benefits is appropriate. *See Leon v. Berryhill*, 880 F.3d 1041, 1045

11

(9th Cir. 2017).  Rather, this matter would benefit from further consideration by the ALJ by properly weighing the medical opinions in the first instance and revisiting the entire medical record.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (remanding for further consideration where the court could not "confidently conclude" the ALJ's errors were harmless because "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court.").

## IV.     CONCLUSION

For the reasons above, the Court REVERSES the ALJ's decision and REMANDS the matter for further consideration and proceedings.

**IT IS SO ORDERED.**

Dated:  November 12, 2025                          _____
                                                                              NATHANAEL M. COUSINS
                                                                              United States Magistrate Judge